Good morning. My name is Brad Nunes. I represent the appellants Mr. and Mrs. Koppula. The text structure in history, the adjustment status statute, reveals a clear congressional intent, and in fact, expressed policy choice to require a visa number to be both current or immediately available only at filing, not at approving. For that reason, this court should vacate the lower court's decision and enjoin the agency's hold policies. This case presents a straightforward question of statutory interpretation. What do we do about the word discretion and its discretion? The whole thing is in the discretion. So how can we enjoin it, even if they should be available and they're not, and even if you have a really sympathetic case, that it's discretionary, doesn't that hurt? How can we give an injunction in that situation? Your Honor, the agency does not discretionarily violate the law. And right now, the final determination of the adjustment of status statute, or excuse me, the adjustment of status may be discretionary, but we don't have a final decision here. We don't have any decisions here. That's why we're here. You're saying the discretion is in the decision, not whether to make a decision? That's correct, Your Honor. But what is your support for that? Your Honor, to go back to whether the agency has a discreet and required duty to make a decision, that's under the North and East Southern Utah Wildlife Alliance case. We address this in our reply, Your Honor. And this statute and the regulations require the agency to make a decision on a discreet application that's applied. The agency can't simply refuse to make a decision on adjustment of status. This issue was raised about a month and a half ago in this court in a case called Leap, L-I versus Judu. And in fact, the same opposing counsel that's here today was with me at that time. So during that argument, I'll represent what she said. No, the agency has a duty to make a final decision on this adjustment of status applications, regardless of the fact that they're discretionary. And I will say the Norton v. Sewer case does indicate that courts can compel final agency actions on discretionary decisions. It cites very approvingly a case from the 1930s called Safeway, Your Honor, where the application was absolutely discretionary. But the court said a mandamus could fall there. At that point, it was before the Administrative Procedure Act. It was a discretionary decision. So I do not believe the Patel line of cases really gets here. If there was a final decision here, it would be a totally different case. But what we're dealing with here is the agency's outright refusal to make a decision on any of these applications based on their misguided policy. It's a policy that Congress rejected outright in 1976. In 1960, Congress enacted the policy that the agencies are implementing here. In 1976, it rejected it. Yet the agencies did not change their practices. In fact, there's a legacy INS memo that says, yes, the statute language changed. We don't think that changes anything. And that's an absurd interpretation of the statute. It should not be condoned by this court, regardless of its link that's been in place for 45 years. And I would argue, Your Honor, the fact that the agency has ignored Congress for 45 years is why we are in this situation today. So this Lee case, what is the status of that now? It's pending, Your Honor. Is it identical to this case? No, Your Honor. Lee case, they did not retrogress. So there are still visas immediately available right now for the one remaining active plaintiff in that case. Do we need to wait in that case before taking action? This addresses an antecedent question. Right, OK. I'm just trying to be in regular order amongst the opinions of this court, which are many, and we must keep up with them. Your Honor, it's hard for me to keep up. For me, too. And the only reason I know that off the top of my head, Your Honor, is I was here a month and a half ago with a different panel in this court arguing that case. And I will say, again, this is a question of statutory interpretation. If we look at the text of 8 U.S.C. 1285A, we see that Congress requires a visa to be, quote, immediately available at filing. We have other cases, though, that say that if you don't actually have a right in the underlying thing, you know, you don't have a, there's no due process right or, you know, there's no substantive due process to the extent we have that in our law. If you don't have that, then it doesn't matter that it's a futile effort. Your Honor, we don't make a due process claim. I would suggest that AFTA doesn't have a cognizable due process interest in an adjustment status application because it is discretionary. Correct, Your Honor. What do you do with 1255B? Your Honor, it supports our reading. 1255B assumes that when the agency, I should say, be more clear, when USCIS makes a final decision that there will be a visa there ready for them. And that can only be a safe assumption if they only require a visa to be immediately available at filing, not at approval. And I will say USCIS and But if they're not available at approval, they can't reduce by one the number of available visas. In other words, it seems that statute cuts the other way. That maybe they were right when they said, well, when Congress amended the statute, it didn't change anything. Your Honor, I would point out in the last 15 years, the example you're talking about where they went out, this happened one time. It was last year on September 6th. And the agency, they communicated and they stopped. And they didn't issue, adjudicate any adjustment status applications for three weeks. But then the pool got filled up with the fiscal year change in October 1st. And so if you read our briefs, we do not argue that if there are no visas available, that they should make a decision. If there are no visas available, the store is empty. So they have to make a decision except when they can't make a decision. And then they don't have to make a decision until later when they can make a decision. Your Honor, I appreciate the word play. Well, I mean, I'm just trying to figure out what do you do with that statute? Because if it's impossible, then it suggests maybe that 1255A and B have to be read together. 1255A and B have to be absolutely read together, Your Honor. It's a holistic agreement. So then how do you square that when, I mean, it just happened it was in September and there's a new fiscal year in October. What happens when that's not the case? 1255B doesn't speak at all to whether it has to be current slash immediately available. Current and immediately available are the same concept. I just use the word current because the other word we're talking about is available. The available goes to the quantity. And USCIS, again, is well aware. Under their current policy, they request a visa number before they approve. And so if they request a visa number and it's not available, then they don't make a decision, Your Honor. That's in the regulations. They've taken care of that. However, when you read those two together, the court that's done that, Your Honor, in a published decision is the Ninth Circuit. It's called Hernandez v. Ashcroft. And they read those two together and said, yes, Congress gave the right to, at that point, INS and now USCIS to trigger the visa allocation. And so that's a congressional choice. And, yes, this is an interagency process that Congress designed to require communication. And I think that's a holistic reading of the statute as well. Congress also required them to adjudicate these in priority date order, meaning the date that the original application was for ease of conversation when the application was filed. And with the government's current theory, there's no rhyme or reason to who gets an adjustment of status decision in relation to their priority date. It's completely out of order. This method would require them to do it in order because if they were allowed to file their adjustment of status, we would know there would be a visa available. And retrogression, which can still occur under our reading, would not impact the orderly line of a first in, first out. You know, there are all kinds of immigration proceedings that don't necessarily make logical sense. You know, we had a case a long time ago, and I can't think of the site for it right now. I've been trying to think of it where the person was going to age out. You know, they're in line and there's no way that it will ever get to them before. And they waited for years and years and years and years, but they age out before and the line just doesn't move. And they have all these things like that that just don't work. And we don't go in and join them, you know, and say, make this work. Because we're not micromanaging that part of the government. And so why here? Your Honor, I'm not asking you to micromanage the government. And I think that the difficult outcomes and difficult decisions in immigration policy are best left to the legislature. And that's what I'm suggesting here, that this court enforce legislative intent. It's been clear since 1976. And you're enforcing congressional intent because the agency has been defying it for 45 years. And Congress has thought this through. It's designed this tricky, complicated paradigm for these types of cases, Your Honor. And if their policy decisions are bad ones, that's not for this court to judge. It's for this court to enforce and let the people vote out their senators, representatives, and use the political solutions. What are the circuit lay of the land on this? Circuit lay of the land on this particular issue, Your Honor, is I argued in the Ninth Circuit about a month ago. That decision is pending. I have this argument, and I believe I'm going to be in the Eighth Circuit sometime next month. I've had a decision out of Nebraska get dismissed for lack of jurisdiction. It's on appeal. It will be consolidated with the case in the Eighth Circuit. I had an argument last week out of Houston on the same issue. The judge indicated he was going to grant the motion to dismiss. I told him I was coming here today. I think he's waiting to issue an opinion. Are you the only one doing this all over the country? Yes, Your Honor. So there's no prior – we don't have a circuit split or anything on how to do this? Not yet, Your Honor. And I think what we're seeing in the courts, just to be frank, is a hesitancy because this is a policy change. This would change the way the government operates. But that's not a reason to not enforce congressional intent. Last term, Justice Barrett dealt with the Patel case, which I'm sure – I know this boy has read several times. And in it, she says, we do not judge the wisdom of policy. We enforce congressional intent, period. And that dealt with statutory preclusion, a very big deal to foreign nationals and removal proceedings. And I think that that's true here. And what I think you'll find is the government's defense are all policy-based. They do not have a good response to the text, structure, and history, which of all of the circuits in this country, this court has adhered to in a very consistent way for years that this is how we interpret a statute. You'll also hear no argument about deference in this case because the agency doesn't have any writing out there that can carry Chevron or even our deference weight. This is a de novo question of law that's being raised here. And it has significant impacts because Mr. and Mrs. Coppola are stuck. And in their non-immigrant status, they are a far cry from permanent residency. They cannot travel freely. Mr. Coppola, who is a tech worker in Austin, is limited on the contracts that he can work on because federal government contracts require a green card or citizenship. His professional growth has been stunted because of that. They can't travel freely. He has missed weddings and funerals in his country of nationality because he would have to get a visa to travel back. And the visa backlogs in his country of nationality are so varying. One month, it's one week. One month, it's one year. And I'm not blaming anyone. But that's the harm that they're suffering. But this idea, well, he can work, it's not, that's not persuasive. I would suggest that's not an adequate alternative. I was going to ask, do you meet the other, I'm sorry. No, you go ahead. I was just going to ask if you meet the other factors for an injunction, but I guess what you're talking about here is irreparable harm. Yes, Your Honor. I mean, the district court didn't address the other factors, right? The district court here did say we didn't meet irreparable harm. They said basically because they haven't denied the application. Or someday in the distant future, you will get an adjudication that this harm will be repairable. And we just think, I should note that. Well, how is that not accurate? I mean, it's the same harm that every other person in Los Angeles is going to suffer because of the dysfunction of the system. Just because other people will suffer, it doesn't make it irreparable. And he can't go back and attend a wedding. He can't go back and attend a funeral. In his culture, when a parent dies, you're supposed to attend one year later, go back to the place of the death, and do some religious rites. He's not able to do that. And that's because of other adjudicatory delays in the immigration system, right? You can get a permission to travel when you're in this state, but it takes 14 months to get and the government only issues it for a year at a time.  Thankfully, his employer has maintained his non-immigrant status. But if they pull that, then he's going to be reliant on his work authorization associated with the adjustment of status. And I will note, if this was a delay of a year, two years, three years, perhaps that wouldn't be irreparable. However, the visa bulletins now move back to January 2011. That is a three-year retrogression from when we originally brought the cases. There are— It was 14, wasn't it 2014? That's correct, Your Honor. So now it's back three full years. The Cato Institute estimates that's going to take 75 years to go forward. I think that's probably a little bit too long, but it's not. The last time the retrogression occurred this far, it took 12 years for folks to be current to do this. And again, all of that time is wasted because what the government— or excuse me, what Congress has said, they consider these other options, right? In 1952, they required a visa to be current and available at filing and at approval. That didn't work, so then they said we're only going to require it to be available and current at approval. That didn't work, and so now we have the statute we have today, which is available and current at filing and filing alone. And that's what we asked this court to enforce. And for those reasons, this court should vacate the lower court's decision and enjoin the agency's hold policies. Can you talk about all the relief that you seek? You were just now talking about it. You want an injunction on— That's it, Your Honor. That's—what now? I'm sorry, I didn't mean to interrupt. You go ahead. Articulate the relief that you seek specifically. Yes, Your Honor. Both USCIS and the State Department have separate policies, so that's sub-regulatory, where if the applicant's visa is not available and current at approval, they put that application on the floor, they freeze it, and they send it off to cold storage and wait. Those two policies are the ones we enjoined. And keep in mind, the result of that would not mean we get a decision tomorrow. It means we go forward with our unreasonable delay claim, right? Because he filed in October 2020. It's been three years. And to be frank, unreasonable delay claim, three years. It's a tough claim to break. But you're not seeking a DAC or something? I think to enjoin it, you do have to declare the policy. Right, but it's not—you're not seeking one and the other? I'm sorry, Your Honor. I do think we're seeking a declaration that the policies are unlawful and then an injunction from the client. Yes, Your Honor. Okay. So, I mean, the court could declare them unlawful but not issue an injunction that is a possible ruling. That's what I'm trying to figure out. What is the scope of the ruling? Absolutely. Yes. Okay. We would take a declaration of unlawful and we'd go back and immediately file for some re-judgment and the right to rule. I think that an injunction allows— And this is not foreshadowing. This is me trying to figure out what you're arguing. I understand, Your Honor. Thank you. Thank you. Good morning, Your Honors. May it please the court. My name is Alessandra Casso. I'd like to begin by briefly responding to counsel's arguments. Before this court is the applicant's request for a mandatory preliminary injunction to change the way that U.S. Citizenship and Immigration Services and the State Department adjudicate adjustment of status on Green Card applications and issue immigrant visas to those applicants. Counsel insists that he's not asking for this court to micromanage the government. However, it's apparent that that is exactly what he's asking this court to do. I don't think he's seeking an issuance of a visa or a determination. I just was asking what he was seeking. Sure. He's not seeking that. Your Honor, in the record on page 127, paragraph 225 of the first amended complaint, counsel is asking for an order approving or deciding his client's adjustment of status applications within 30 days. And so counsel's argument has shifted a bit throughout this process. And so now he is seeking for the policy to be enjoined, which he did at the district court level. But at bottom, counsel is asking for his client's applications to be adjudicated and ultimately approved. Does he have a right to a declaratory judgment that the agency should follow the statute? The agencies are following the statute, Your Honor. The statute, as it is written, prohibits the government from approving his client's adjustment of status applications because their priority dates are not current. All it says is that you are, in your discretion, supposed to make a decision when the visa is immediately available at the time the application is filed. What do you do with the change in statute that took away clear imprimatur of approval to the approach that you just continued to follow? Your Honor, that particular change in the statute is not illustrative or does not ultimately mean that the government can only require the visa to be immediately available at the time of application. But it used to say the application is filed and when the application is approved, right? Yes. And Congress said, nope, just filed. Correct. So what does it mean then? A better question. What does the agency support, statutory support, for continuing to do it the way they did it before when the statute clearly allowed it? Certainly, Your Honor. And as this Court noted earlier, we must read 1255A and B together. Okay. So it's 1255B. Yes. And I'd like to draw this Court's attention to the benefit that this particular reading has for these applicants. Let's not talk about benefit. Let's talk about whether it's correct or not. I mean, the one says that it focuses on the time the application is filed, period. It used to say filed and when approved. So then you bootstrap, I guess, 1255B. And that may be correct, by the way. But counsel obviously disagreed when I asked him that. You're sort of inferring that if there are no preference visas available to reduce the number of minus one or minus two or whatever, then you can't do it. So in other words, retrogression must be okay. That's a much more inferential leap, I guess, than what used to be when the statute said it's filing and approval. So talk to me about how that's the correct view of the statute. Certainly. And in our brief, we cite to a case in the Northern District of California that kind of jumps into that discussion, that distinction between available at filing and available when the application is ultimately approved. And the court goes into a discussion about eligibility. So an applicant, when applying for adjustment of status, is merely eligible for that benefit. That application still has to go through a vetting process and ultimately goes through determination as to whether the individual merits a grant of adjustment of status in the interest of discretion, is statutorily eligible. But that does not entitle that individual to become a permanent resident the second they apply for that visa. I don't know that you're, I'm not sure whether you answered Judge Wilson's question, but it's my question, too. So I don't understand your answer to the question. Are you saying that the word change, that Congress went through the trouble to change the wording, that it meant absolutely nothing? And you could just continue to go on about your business doing exactly the same way? Or are you saying that you have complied with the word change? I don't understand. The word change does not prohibit USCIS and the Department of State's current practice. Because omitting that verbiage immediately available at the time of application and approval enables the government to accept adjustment of status applications for processing without necessarily requiring that visa to be available. So did it make a difference or not?  Did you have to go look at your practices and say, we may need to make some adjustments here because Congress has changed our statute. And we need to check this out and see what do we need to do differently because Congress changed the statute and the wording of the statute. And then we might have some analysis that says, oh, well, it really doesn't change it, even though it looks like it changes it. I mean, where is that? Tell me what the analysis is of whether it changed it because it looks to me on its face that it's changed. Where is that analysis? And what did the agency determine about that? The amendment, ultimately what it changed was that once an individual applied for adjustment of status, their visa did not need to be current the entire time. Meaning the agency could accept for processing that adjustment of status application. If a visa did not, it became unavailable during the pendency of that application, then the application could still stay in the queue and wouldn't be denied. So it allowed the government to keep these individuals in basically a holding pattern and allowed them to maintain their priority until the visa became available again. And that offers a benefit to those applicants because during the pendency of that application queue, they obtain travel authorization. They're able to remain in the United States on lawful status and they have work authorization and they don't step out of line. So, the fact that that that verbiage is taken out of a statute really allows applicants who within oversubscribed categories, just like the applicants in this case, allows them to benefit from progression. And so, instead of requiring them to have their application denied or taken out of line because a visa is not available, it allows them to remain in that queue. And that's a fundamental fairness issue. But you believe it did not give any responsibility to actually adjudicate the matter if they met the requirement. Even though the statute on its face says it needs to be adjudicated, you don't believe it does. In terms of making a final decision on the application? That you would make a decision, yes. It seems to say on its face that you're entitled to the process and not to just be in the limbo. And so that's what the problem is. Right, and the government understands that this is a lengthy adjudication process. These individuals are entitled to a final decision on their applications. However, at the end of the day, the agencies here are executing their congressional statutory mandates. The quarterly limits, the per country limits, the numerical limits. Well, that doesn't have anything to do with whether they get an answer. The answer may be no because of all these quarterly limits, etc. But why aren't they on the text of the statute? If you believe they're not entitled to know an answer on the text, then please explain how the text works so that I know it doesn't say that. I'm happy to hear that argument. I'm trying to preclude you from making that argument. But if the argument is that it doesn't matter that the text says you get a final decision because of all these other considerations, that is what would be problematic. At the end of the day, the two agencies that are charged with administering this program are inuring a benefit to the applicants by having the system in place. Well, great, they give a benefit. But the question is, do they do their statutory duty? Are they entitled to a final decision on this text or not, counsel? They are entitled to the final decision on their applications. Yes. Okay. Then why would it not be appropriate to say that for us to say, by golly, you need to give the final decision. Because they're entitled to it. This work can certainly issue a decision mandating the and the Department of State to issue a final decision on these applications. However, those the visas that will be allocated to the applicants will ultimately preclude other applicants who have been waiting longer and who have a closer position in the queue. They'll just move them a couple of steps back. And so the priority system that is in place. Is a product of the agencies executing their statutory mandate following 1255 and B, and putting in place a process, a fair process. They're not perfect by which people can plan to apply for adjustment of status based on visa availability. Continue to have that their place in line while receiving other benefits. And be able to predict with some certainty, not precise certainty when they're able to expect a final decision on their application by virtue of the visa bulletin that the Department of State issued. Well, see, the statute doesn't say any of that stuff. I mean, the statute, I thought where you're going to go is to say, yeah, they're entitled to a decision. But under 1255B, if there's no available visa, the decision is denied. Right. I mean, I guess that'd be a way to do it, too. But that doesn't seem really consonant with the statutory change. I mean, you know, the allure of the argument of counsel opposite is the statute says that if a visa is immediately available when you file this application, then you're eligible for it. Right. And I don't hear you really saying that counsel opposite's clients wouldn't have a meritorious application. They're just stuck in the mumbo-jumbo process here waiting for whenever, well, some of this might, you know, retrogress or not retrogress or their year comes up and their numbers called. But otherwise, we're not getting to the merits. Go back to what you were talking about a little earlier with 1255A. You were talking about eligibility. And I want to hear a little bit more about that because what I hear you saying is maybe 1255A is sort of maybe necessary for an application but not sufficient for the application to go through the rest of the process. I mean, is that? That's correct. Maybe you can explain Judge Elrod's and my concerns with that angle. So, to your point about allocating a visa at the time of application, I think a good way to look at this immigrant visa number that we have discussed throughout the briefing, it's more of an accounting device. Right. It enables the Department of State to make projections and essentially hold someone's place in line. But it's not until that person demonstrates eligibility for the benefit that they're requesting through the adjudication process that they're able to actually receive that immigrant visa. So, allocating a visa to an applicant at the outset of the process before they've even demonstrated eligibility is contrary to the spirit of the statute. But it's not contrary to the language of the statute, though. The language of the statute says you're eligible if it's available when you file your application. It doesn't talk about your place in line and policies and the spirit of this or that. It just says pretty clearly. And it's even more clear because the language of the statute before now said filing and approval. And Congress took that out. It sounds to me that if it didn't workable, maybe the folks in the agencies ought to be back at Congress saying, this isn't workable. We need a change or conform with the statute. To your point, Judge, what counsel is proposing is not workable in this current state. When his clients applied for adjustment of status, if they were to have been allocated or issued an immigrant visa at that time, subsection B necessarily requires the State Department to remove those two visas from the pool for fiscal year 2023 and allocate them to his clients. We're not talking about whether or not this is workable, administrable within the given system. We're talking about did Congress mandate it. And that's a totally different thing. And that's our quest for today. So we're not trying to see what's the most administrable system we could come up with in this difficult area. That's not our job. We just need to know what did Congress say. And if Congress said something that doesn't work at all, then we all have people to go talk to Congress and get the change back. It's the government's position that this is the system that Congress. Requiring these availability at the time of application. And understanding that adjustment status. Adjudications oftentimes usually spend more than 1 fiscal year to require having that language in subsection B, having the State Department. Mandatorily reduce the number of visas by 1 during the fiscal year, then current. It's the plain language of the statute here. And notwithstanding the change that was made to the statutory language. This is the process by which Congress has set up for the agencies to work within. Well, but it sounds a little bit like the agencies just decided to give Congress the thumbs nose. And we're going to keep doing it the way we were doing it before. Could the agencies have done it when Congress changed the statute? The way we were talking about just moments ago, where when somebody files, the visas are available. And at that point, you allocate the visa to the application. Otherwise, could they have changed the way they did things once upon a time to comport with the statute? And they just didn't do it. So now the argument is, well, it's unworkable. So we can't do it that way. Ergo, it must be that Congress intended us to keep doing it the way we're doing it. Ultimately, I don't think that that would be the case, Your Honor, because. Did they try? Just back to Judge Elrod's question. Is there anything in the record where the agencies, when the statute changed, adjusted what they did to try to comport with the new version of the statute? No, Your Honor. And the agencies interpreted that change and interpreted the greater statute as meaning Subsection A allows an application to be filed when the visa is current and necessarily does not necessarily mean that that individual is eligible and merits an exercise of discretion. And subsection B requires the Department of State to reduce by 1 the number of visas for that particular classification during the fiscal year where. The visa is current and where the application is ultimately approved. The government's position is that narrowly looking at the preliminary injunction before this court, there's not been an abuse of discretion here. Counsel has a very high burden to show that the law and the facts clearly favor his decision. In this exercise, our discussion today has determined that the counsel's position is not clearly the favorable position. And ultimately, even though the district court found that the likelihood of success carried the day and was the beginning and the end of the inquiry, counsel can't succeed on the irreparable harm or the balance of the equities question either. And so even if this court determined that the likelihood of success question maybe is an open question that could further be dealt into, there's no irreparable harm here. What about what counsel opposite said? His clients can't travel, his clients can't go back to their country of origin, his clients can't work or rise in the profession. Is that an irreparable harm? No, your honor. Counsel's clients can travel. They, by virtue of being in the queue of adjustment of status applicants, they are entitled to apply for an employment, excuse me, a travel authorization document as well as an employment authorization document. And then going back to the non-immigrant status that they hold, that also entitles them to travel, to obtain a visa and enter the country and exit as they choose within the validity of that visa. But there's no way to actually do that. Your honor, I see that my time is up. Can I answer your questions? There is a way to obtain those travel documents. Is that your question with respect to counsel's point? Yes, but you can't know that you would get it. You have to, it's a longer line than a year and you have to only, you do apply within the year. So, it's for all practical purposes not there. Unless you just hit the lottery on the correct exact day, maybe, perhaps. The length and wait times for employment, excuse me, travel authorization documents. You can't, you can't just sit on the line because it evaporates after one year. This is not like this other line over here where you can sit for years and years and years. The opportunity for the benefit remains and even though the... It's illusory. Isn't it? Is it not illusory? Is what he said false, Drew? I'm not false, I'm not saying he's a liar. Is it incorrect? Not necessarily, Your Honor. However, the government still maintains that the agencies acknowledge these length and wait times and have given benefits to these individuals. And at the end of the day, there's no irreparable harm that will befall them. They won't be removed from the country. They won't lose their place in line for adjustment of status. And ultimately, the district court did not use its discretion in concluding that there's no likelihood of success on the merits. Thank you very much, Counselor. Counselor, you saved time for rebuttal. Thank you, Your Honor. Did you take the position that the court needed to order that you get relief in 30 days? Your Honor, yes, we did. In relation to our third cause of action, which is an unreasonable delay cause of action. This case was originally filed when there were visas still available. The visa's no longer available. We amended the complaint to add challenges to the adjudicatory hold. Is that on appeal, that part of the case? No, Your Honor. The preliminary injunction only dealt with legal questions. That is, whether their adjudicatory hold policy is lawful or not. So, yes, we do need an alternative. And we ask for different types of relief for different types of claims. But the unreasonable delay claim, if I can't win on the first two claims, then I never get to the unreasonable delay claim, Your Honor. And that's all in the amended complaint that my co-counselor, opposing counsel, indicated. There is one decision, Your Honor, on the lien that does interpret this from the agency. It's called the Matter of Long. It's from the Board of Immigration Appeals in 1977. This is the closest in time if you want to find an agency interpretation. Of course, this is pretty Chevron and everything. But what you'll find is there's two decisions, actually. And this is on the DMJ's website with the BIA cases. The first one basically looks at statutory interpretations or the new statutes, and nothing changed. And then there's a revised opinion that the attorney general himself moved for reconsideration to get because they had won previously and urged the BIA to adopt the position we are advocating for. And so the attorney general was charged in the Immigration and Nationality Act with the final word on all questions of law in the Immigration and Nationality Act of the reason our position is not the government's current position. That's the closest thing you're going to find to an agency interpretation of this issue, Your Honor. I'm excited. Just one question. The 2055A, you acknowledged it obviously talks about discretion. Yes, Your Honor. So what's your best case for the proposition that we should nevertheless treat this as a mandate? Excuse me? I'm sorry. What's your best case for the proposition that we should treat this as a mandate even though it says discretion? I would point you to the Patel case, Your Honor. They distinguish between cases that are final and have a decision, and that's discretionary. But there's no discretion in whether they have to make a decision. My opposing counsel just stated that. They do not dispute that, that they have to make a final decision. The difference between inaction and action is very well established in the Administrative Procedure Act, which is what we proceed under, Your Honor. I don't—the best case I guess I can tell you is that Norton v. Suwa case where they—say a mandamus, or nowadays an APA case, would be appropriate even if it's discretionary. And I just want to point out one last— That's not an entitlement to relief. It's an entitlement to— A decision. Either a relief or the denial of relief. Absolutely, Your Honor. And you will not find a claim in our complaint that we seek an approval. I know we can't get that. We can just get a decision. And I see my time is up. If I may address one question, if that's okay, where I can sit down. Quickly. Yes. Judge Wilson, you've asked a lot about 255B. I do want to point you to the language that says that they're only authorized to give visas under 1152 and 1153. And if you look at that, you'll see there's productivity limits. So in any fiscal quarter, they can only decide 27%. And so this idea that you're going to run out of visas in the middle of the year and they're going to keep ordering them, that's actually not allowed. And that's, again, all designed by Congress, this system, so that the agencies aren't overwhelmed and they can only decide 27%, 27%. Thank you, Your Honor. Thank you. We have your argument. This case is submitted.